GEORGE A. CREIGHTON v. THE BOARD OF CHOSEN
FREEHOLDERS OF THE COUNTY OF HUDSON.

Argued November 10, 1903—Decided February 23, 1904.

To show a legal liability resting upon a board of freeholders to make
   compensation to a person who is injured while passing over a
   county bridge, through the defective condition of the structure,
   it must appear not only that the bridge was out of repair but
   that the board knew, or were chargeable with knowledge, of its
   condition in time to have made the necessary repairs before the
   happening of the accident to the plaintiff.

On rule to show cause.

Before GUMMERE, CHIEF JUSTICE, and Justices DIXON,
HENDRICKSON and SWAYZE.

For the rule, *John Griffin.*

*Contra, Jacob L. Newman.*

The opinion of the court was delivered by

GUMMERE, CHIEF JUSTICE. This action is brought by
the plaintiff to recover from the defendant for injuries re-
ceived by him, and which he claims resulted from the wrong-
ful neglect of the defendants to keep in repair a certain
bridge within the county of Hudson, spanning the Hacken-
sack river. According to the testimony of the plaintiff, the
accident occurred under the following circumstances: He
was riding upon a wagon loaded with empty barrels; the
barrels were arranged upon the wagon in three tiers, and
the plaintiff was standing in one which was upon the top
tier, some two or three barrels from the front, and a little
to the left of the center of the load. The wagon was being
driven by one Frank Shupe. When it reached a point about
two hundred and fifty feet from the easterly end of the

bridge, the load struck a part of one of the trusses; the impact caused a rope binding the barrels to break, and a part of the load, including the barrel in which the plaintiff was standing, was thrown into the river, the plaintiff being carried along with it. The testimony relied upon to fasten responsibility for the accident upon the defendants is that of one Shupe, the driver of the wagon. His story is that he was driving very slowly across the bridge, when suddenly he felt a jarring and a lurch, as if something had broken under the forward right-hand wheel of the wagon; that immediately his wagon was "slewed" to the right and crashed against the bridge, the barrels falling in every direction, that in which the plaintiff was standing being flung into the water. He then stated that, after the plaintiff was rescued from the river, he (the witness) returned to the point upon the bridge where the accident had occurred and there discovered that a piece of planking, about two and a half feet long and probably three or four inches wide, had been wrenched from the flooring of the bridge. He further testified that while driving across the bridge he was paying particular attention to its condition, and that he is positive that this broken piece of planking was not lying upon the bridge at that time. His story as to the defective condition of the bridge is entirely uncorroborated.

On the part of the defendants it was proved that at the time of the injury to the plaintiff the floor system of the bridge was being reconstructed, and that within three or four weeks before the happening of the accident the flooring upon that part of the bridge where it occurred had been renewed with two-inch spruce planking. This testimony is uncontradicted. In addition, three witnesses were called—one the engineer in charge of the reconstruction of the floor system of the bridge; another the assistant engineer upon that work, and the third a motorman in the employ of the North Jersey Street Railway Company, who was on duty at the entrance to the bridge at the time of the accident—each of whom swore that, very shortly after the accident,

they examined the planking of the bridge at the point where the barrels were thrown into the river and found it in good condition, no piece being broken out of the floor at that place. From this recital of the testimony it is clear that the finding of the jury that the injury to the plaintiff was the result of the defective condition of the bridge, is against the preponderance of the evidence.

But even if the testimony had justified the conclusion that the flooring of the bridge was defective, the verdict should have been for the defendants. The liability of the board of freeholders in a case like that under consideration is not that of insurers. It arises only where they "wrongfully neglect to repair" the bridge. *Gen. Stat., p.* 307, § 9. In order to prove a legal liability resting upon the board, therefore, it was necessary for the plaintiff to show not only that the bridge was out of repair, but, in addition, either that the board of freeholders had knowledge of its condition, or at least that it had been out of repair for so long a time that the board was chargeable with notice of that fact; and further, that they had, or were chargeable with, this knowledge in time to have made the necessary repairs before the happening of the accident to the plaintiff; for unless they had, or should have had, such knowledge in time to make the repairs, they were not guilty of any wrongful neglect in failing to make them. No attempt, however, was made either to show that the board was aware of the existence of the defect or that it had existed for so long a time that, if inspections of the bridge had been made at reasonably frequent intervals, it would have been discovered before the accident occurred.

The rule to show cause should be made absolute.